IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  12-cv-01985-LTB

BRIAN J. HUND,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

Plaintiff, Brian J. Hund, appeals from the Social Security Administration Commissioner's

(the "Commissioner") final decision denying his application for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI"), filed pursuant to Titles II and XVI of the

Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c.  Jurisdiction is proper under

42 U.S.C. § 405(g).  Oral argument will not materially aid in resolving this appeal.  After

considering the parties' arguments and the administrative record, for the reasons below, I affirm

the Commissioner's final order**.**

**I.  STATEMENT OF THE CASE**

Plaintiff seeks judicial review of the Commissioner's decision denying his September 5,

2008 application for SSI and his October 22, 2008 application for DIB.  [Administrative Record

("AR") Doc. # 7-5, 2-13].  His applications were initially denied at the administrative level.  [*Id.*

at 7-3, 2-3].  An Administrative Law Judge ("ALJ") subsequently conducted a hearing on

September 9, 2010 (*Id.* at 7-2, 30-55), and issued a written ruling on December 13, 2010 (*Id.* at

10-20).  The ALJ denied Plaintiff's application on the basis that he was not disabled during the

relevant time period because he could perform work in the national economy given his residual functional capacity ("RFC"), age, education, and work experience.  [*Id.*]  Plaintiff appealed the denial of his application to the Social Security Administration Appeals Council ("Appeals Council").  [*Id.* at 8-9].  On May 31, 2012, the Appeals Council declined to review the decision of the ALJ, making the denial final for the purpose of judicial review.  [*Id.*]  In denying review, the Appeals Council informed Plaintiff that it "considered the reasons [Plaintiff] disagree[d] with the decision in the material listed on the enclosed Order of Appeals Council.  [It] found this information does not provide a basis for changing the Administrative Law Judge's decision." [*Id.* at 2].

 Plaintiff timely filed his Complaint with this Court seeking review of the Commissioner's final decision.  [Doc. # 1].

## II.  FACTS

The facts are largely undisputed and extensively provided in the ALJ's order.  As such, I provide a limited factual background as relevant here.

Plaintiff was born on March 23, 1972, was 36 years old on his alleged onset date of September 15, 2008, and was 38 at the time of the ALJ's decision.  [AR Doc. # 7-7, 34].  He graduated from high school and attended college for two years.  [*Id.* at 7-7, 35].  He served in the Army from 1993 to 1996, and after his honorable discharge, served for several years in the Army Reserve.  [*Id.*]  His past relevant work history consists of work at the United States Penitentiary, graphic design, sales associate, apprentice electrician, digital imaging supervisor, and janitorial work.  [*Id.* at 35-37 & 7-6, 7].  Plaintiff alleges a long history of back and leg trauma and that he became disabled on September 15, 2008.  [*Id.* at 7-7, 135 & 7-11, 27, 58].  Pursuant to 20 C.F.R.

§ 404.130, in order to be eligible for benefits, Plaintiff must prove that his disability began before the date through which he remained insured, which in this case was December 31, 2012. [*Id.* at 7-2, 13].  Thus here, the relevant time period for determining disability is September 15, 2008, through the date of the ALJ's decision, December 13, 2010.  [*See id.*]; 20 C.F.R. § 404.130.

During the relevant time period Plaintiff was not engaged in substantial gainful activity. [*Id.* at 7-2, 15].  Plaintiff frequently visited his primary care physician, Dr. Elaine M. Quintana. [*Id.* at 7-7, 3-50 & 7-11, 2-37 & 7-12, 2-45].  Throughout his treatment, Dr. Quintana consistently reported that Plaintiff was functioning normally, did not have difficulty moving, often had a full range or nearly full range of motion in his back, and had no gait disturbance. [*Id.*] Dr. Quintana also consistently reported that although Plaintiff did have pain, his pain had been managed conservatively through medications and that Plaintiff had not reported any negative side effects.  [*Id.* at 7-2, 19-21].  Plaintiff's physical therapist, his occupational medicine physician (Dr. Michael A. Dallenbach), and several other physicians at the Office of Veteran's Affairs (Dr. Chloe Dent & Dr. Allen Myers) all recorded similar observations. [*Id.* at 7-10, 74-80 & 7-11, 44-61].

Plaintiff also received treatment from a psychiatrist at the Office of Veteran's Affairs, Dr. Robert E. Vadnal.  During the relevant time period Dr. Vadnal saw Plaintiff approximately every two to three months.  [*Id.* at 7-2, 19-22].  Throughout that time Dr. Vadnal reported that Plaintiff was cooperative, was dressed normally, spoke with a normal rate and tone, and was clear and oriented.  [*Id.*]  He also consistently noted that Plaintiff was mildly depressed and had mild irritability.  [*Id.*]

3

### III.  LAW

To qualify for benefits under sections 216(I) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB and/or SSI for a period of disability, and be "disabled" as defined by the SSA.  42 U.S.C. §§ 416(I), 423, 1382.  Additionally, SSI requires that an individual meet income, resource, and other relevant requirements.  *See* 42 U.S.C. § 1382.  A Five-Step sequential evaluation process is used to determine whether a claimant is disabled under the SSA, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One asks whether the claimant is presently engaged in substantial gainful activity. If he is, benefits are denied.  *See* 20 C.F.R. § 404.1520.  Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c).  If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible.  *See* 20 C.F.R. § 404.1520(c).  Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  *See* 20 C.F.R. § 404.1520(d).  If the impairment is not listed, he is not presumed to be conclusively disabled.  Step Four then requires the claimant to show that his impairment(s) and assessed RFC prevent him from performing work that he has performed in the past.  If the claimant is able to perform his previous work, he is not disabled.  *See* 20 C.F.R. §§ 404.1520(e),

(f).  Finally, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience.  *See* 20 C.F.R. § 404.1520(g).

## IV.  ALJ's RULING

The ALJ found that Plaintiff had met the insured requirements of the SSA through December 31, 2012.  [AR Doc. # 7-2, 13].  She ruled that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 15, 2008, through the date of the ALJ's decision, December 13, 2010.  [*Id.* at 15].  The ALJ found that through the date of her decision, the Plaintiff had the following sufficiently severe impairments: status post right shoulder surgery, status post back fracture, major depressive disorder, panic disorder with agoraphobia, and attention deficit/hyperactivity disorder (Step Two).  [*Id.*]  However, the ALJ then determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments (Step Three) in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  [*Id.* at 15-17].  Because the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, she then assessed Plaintiff's RFC.  [*Id.* at 17-22].

The ALJ evaluated the evidence and found that through the date last insured, Plaintiff had the RFC to perform work light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.97(b), except that the work: must not require more than occasional overhead lifting with the right upper extremity; must not require total standing/walking more than six hours in an eight-hour workday; must allow Plaintiff to alternate between sitting and standing; and must be able to be performed

by a person with moderate limitations in maintaining concentration, persistence and pace and in working in close proximity to others.. [*Id*. at 20]. As a result of Plaintiff's RFC assessment, the ALJ found that Plaintiff was not able to perform any of his past relevant work (Step 4). [*Id.* at 22]. Because the ALJ concluded at Step Four that Plaintiff was unable to perform any past relevant work, the ALJ continued to Step Five, and under that Step concluded that there were other jobs existing in the national economy that Plaintiff was able to perform. [*Id.* at 22-23]. Consequently, the ALJ concluded that Plaintiff was not disabled between his alleged onset date and the date last insured. [*Id.* at 23-24].

## V.  STANDARD OF REVIEW

I review the Commissioner's decision (expressed here as the ruling of the ALJ) "to determine whether the factual findings are supported by substantial evidence in light of the entire record and to determine whether the correct legal standards were applied." *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003). My review of the factual findings is to determine whether they, "are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (quotations omitted). It requires "more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

# VI.  APPEAL

Plaintiff challenges the ALJ's determinations on three grounds.  First, Plaintiff contends that the ALJ erred in her RFC analysis.  Second, Plaintiff contends that the ALJ's Step Four evaluations of Plaintiff's treating physicians, Dr. Elaine M. Quintana and Dr. Robert E. Vadnal, were improper.  Third, Plaintiff challenges the ALJ's determination Plaintiff's credibility.

## A.     ALJ's RFC Assessment

Plaintiff first challenges the ALJ's assessed RFC.  Plaintiff contends that the "ALJ's conclusion that Plaintiff was capable of light work with occasional overhead lifting with his right hand was not supported by any medical record and ignored medical evidence to the contrary." [Doc. # 13, p. 19].  Specifically, Plaintiff alleges that the ALJ ignored evidence of Plaintiff's shoulder/arm impairment, back/neck impairment, and mental impairments.  I disagree.

The RFC assessment is made by the ALJ "based on all the relevant evidence in [the claimant's] case record."  20 C.F.R. § 404.1545(a)(1).  The RFC is an assessment of the most a claimant can do despite his or her limitations.  *Id.*  Examples of the types of evidence required to be considered in making an RFC assessment are the claimant's medical history, medical signs, laboratory findings, and medical source statements.  Soc. Sec. Ruling ("SSR") 96-8p (July 2, 1996).  An ALJ must make specific RFC findings based on all of the relevant evidence in the case record.  *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  SSR 96-8p provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case

7

record. The adjudicator must also explain how any material inconsistencies or
ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996); *see also Haddock v. Apfel*, 196 F.3d 1084,

1088 (10th Cir. 1999).

Generally, "an RFC assessment must first identify the individual's functional limitations

or restrictions and assess his or her work-related abilities on a function-by-function basis . . .

Only after that may RFC be expressed in terms of the exertional levels of work" such as "light."

*Ren v. Astrue*, 2009 WL 3497785, *5 (D. Colo., Oct. 29, 2009) (unpublished) (*citing* SSR 96-8p,

1996 WL 374184, *1 (1996)).  This function-by-function assessment "requires the ALJ to

address 'an individual's limitations and restrictions of physical strength and defines the

individual's remaining abilities to perform each of seven strength demands: sitting, standing,

walking, lifting, carrying, pushing, and pulling.'"  *Id.* (*quoting* SSR 96-8p, 1996 WL 374184,

*5).  Additionally "'[e]ach function must be considered separately . . . even if the final RFC

assessment will combine activities.'"  *Id.* (*quoting* SSR 96-8p, 1996 WL 374184, at *5).

Here, the ALJ determined that Plaintiff has the RFC to perform "light work," as defined

by 20 C.F.R. § 404.1567(b) and 416.967(b), with the following limitations, the work: must not

require more than occasional overhead lifting with the right upper extremity; must not require

total standing/walking more than six hours in an eight-hour workday; must allow the claimant to

alternate between sitting and standing; and must be able to be performed by a person with

moderate limitations in maintaining concentration, persistence, and pace, and in working in close

proximity to others.  [AR Doc. # 7-2, 17].  Thus, the ALJ stated that Plaintiff could perform

"light work" with additional, articulated restrictions addressing the strength demands.  The Act

defines "light work" as work that:

> Involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b).  The definition of "light work," combined with the additional specific

limitations the ALJ articulated, makes it clear that the ALJ expressed a finding as to Plaintiff's

ability to lift, his standing and sitting limitations, and mental limitations.  The ALJ expressly

provided that Plaintiff could lift 20 pounds at a time, could frequently lift objects weighing up to

10 pounds, must be able to alternate between sitting and standing with no more than six hours of

either, must engage in activities involving moderate limitations in maintaining concentration,

persistence and pace, and has moderate limitations when working in close proximity to others.

Stated differently, the ALJ did not express Plaintiff's entire RFC solely in terms of the exertional

level of work, which is what SSR 96-8p instructs against.  The ALJ instead expressed Plaintiff's

abilities by saying he could perform "light work" with additional, articulated reasons.  She

therefore comported with SSR 96-8p.

Furthermore, SSR 96-8p specifically notes that the function-by-function analysis is most

relevant when an ALJ determines whether a claimant is able to perform past work at Step Four.

*See* SSR 96-8p,  1996 WL 374184, at *5.  Because the ALJ here found that the Plaintiff was

unable to do past relevant work, "the function-by-function analysis is less critical."  *Ren*, 2009

WL 3497785, at *6 (*quoting* SSR 96-8p, 1996 WL 374184, at *5).  Additionally, the ALJ's

subsequent analysis discussed in detail the medical evidence relating to Plaintiff's ability to

9

perform the seven strength demands. "This is adequate to meet the requirements of 96-8p." *Id.*; see also Gay v. Sullivan, 986 F.2d 1336, 1341 n.3 (10th Cir. 1993) (holding that any error in failing to include an explicit statement of a specific restriction when there is a complete RFC analysis is merely a technical error "minor enough not to undermine confidence in the determination of th[e] case."); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that any such potential error is therefore harmless).

For these reasons I reject Plaintiff's argument and hold that the ALJ did not err in assessing Plaintiff's RFC. Furthermore, substantial evidence in the record as a whole supports the ALJ's determinations.

**B.    ALJ's Evaluation of Treating Physicians' Opinions**

Plaintiff argues that the opinions of his treating physicians, Dr. Quintana and Dr. Vadnal, were well supported by the evidence, not contradicted by any other medical evidence, and thus should have been given controlling weight. Further, Plaintiff argues that although the ALJ purported to give "little weight" to some of Dr. Quintana's and Dr. Vadnal's opinions, in reality she accorded their opinions no weight. For the reasons below, I disagree.

The parties do not dispute that Dr. Quintana and Dr. Vadnal were treating sources. According to the "treating physician rule," the Commissioner will generally "give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F .R. § 404.1527(c)(2). In fact, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it." *Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 289-90 (10th Cir.

10

1995).  A treating physician's opinion is accorded this weight because of the unique perspective

they have to the medical evidence that cannot be obtained from the objective medical findings

alone or from reports of individual examinations.  *See Robinson v. Barnhart*, 366 F.3d 1078,

1084 (10th Cir. 2004).

When assessing how much weight to give a treating source opinion, the ALJ must

complete a two-step inquiry, each step of which is analytically distinct.  *Krauser v. Astrue*, 638

F.3d 1324, 1330 (10th Cir. 2011).  The ALJ must first determine whether the opinion is

conclusive– that is, whether it is to be accorded "controlling weight" on the matter to which it

relates.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *accord Krauser*, 638 F.3d at

1330.  To do so, the ALJ:

> [M]ust first consider whether the opinion is well-supported by medically
> acceptable clinical and laboratory diagnostic techniques. If the answer to this
> question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the
> opinion is well-supported, he must then confirm that the opinion is consistent
> with other substantial evidence in the record. [ . . . ] [I]f the opinion is deficient in
> either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F3d at 1300 (*applying* SSR 96-2p, 1996 WL 374188, at *2) (internal quotation

marks and citations omitted); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If, however, a treating physician's opinion is not entitled to controlling weight, the ALJ

must proceed to the next step because, "[t]reating source medical opinions are still entitled to

deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."

*Watkins*, 350 F3d at 1300.  At Step Two, "the ALJ must make clear how much weight the

opinion is being given (including whether it is being rejected outright) and give good reasons,

tied to the factors specified in the cited regulations for this particular purpose, for the weight

assigned." *Krauser*, 638 F.3d at 1330.  If this is not done, remand is mandatory.  *Id.*  As SSR 96-

2p explains:

> Adjudicators must remember that a finding that a treating source medical opinion
> is not well-supported by medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial evidence in the case record
> *means only that the opinion is not entitled to "controlling weight," not that the
> opinion should be rejected*.  Treating source medical opinions are still entitled to
> deference and must be weighed using all of the factors provided in [§§ ] 404.1527
> and 416.927.  *In many cases, a treating source's medical opinion will be entitled
> to the greatest weight and should be adopted, even if it does not meet the test for
> controlling weight*.

*Id.* (citing SSR 96-2p, 1996 WL 374188, at *4) (emphasis added).  Hence, the absence of a

condition for controlling weight raises, but does not resolve the second, distinct question of how

much weight to give the opinion.  *Id.* at 1330-31 (*citing Langley*, 373 F.3d at 1120) (holding that

while absence of objective testing provided basis for denying controlling weight to treating

physician's opinion, "[t]he ALJ was not entitled, however, to completely reject [it] on this

basis")).  In weighing the opinion, the ALJ must consider the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2)
> the nature and extent of the treatment relationship, including the treatment
> provided and the kind of examination or testing performed; (3) the degree to
> which the physician's opinion is supported by relevant evidence; (4) consistency
> between the opinion and the record as a whole; (5) whether or not the physician is
> a specialist in the area upon which an opinion is rendered; and (6) other factors
> brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331.  In applying these factors, "an ALJ must 'give good reasons in the notice of

determination or decision' for the weight [s]he ultimatel[y] assign[s] the opinion."  *Watkins*, 350

F.3d at 1300 (*quoting* 20 C.F.R. § 404.1527(d)(2)); *see also* SSR 96-2p, 1996 WL 374188, at *5;

*Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).  Without these findings, remand is

required.  *Watkins*, 350 F.3d at 1300-01; *accord Krauser*, 638 F.3d at 1330.  Lastly, if the ALJ

12

rejects the opinion entirely, she must give "specific, legitimate reasons" for doing so.  *Watkins*,

350 F.3d at 1301.

### 1.    Dr. Quintana

Plaintiff contends that the ALJ erred by improperly rejecting the opinion of Dr. Quintana,

Plaintiff's primary care physician at the Office of Veteran's Affairs.  In addition to Dr.

Quintana's treatment notes, Dr. Quintana provided her opinion as to Plaintiff's condition in a

worksheet, dated April 28, 2009, and through progress notes for an administrative hearing, dated

July 26, 2010.  [AR Doc. # 7-10, 81-85 & 7-11, 66].  In both the worksheet and in her progress

notes, Dr. Quintana concluded that Plaintiff could sit, stand, and walk, each five minutes at a

time, and could sit, stand, and walk, each for a total of twenty minutes in an eight-hour work day.

[*Id.*]  She also provided that Plaintiff could not reach overhead with his right hand, and could

only occasionally push, pull, and reach in all other directions.  [*Id.*]  As for Plaintiff's left hand,

Dr. Quintana provided that Plaintiff could occasionally and sometimes frequently reach

overhead, all other directions, and push and pull.  [*Id.*].  In the worksheet Dr. Quintana provided

that Plaintiff could occasionally lift and carry up to ten pounds.  [*Id*. at 7-10, 81-85].  In her

progress notes she provided that Plaintiff could occasionally lift up to five pounds and could not

lift anything over five pounds.  [*Id*. at 7-11, 66].  Dr. Quintana also provided that Plaintiff could

never perform any of the following activities: climb stairs and/or ramps, climb ladders or

scaffolds, balance, stoop, kneel, crouch, or crawl.  [*Id*. at 7-10, 81-85 & 7-11, 66].  However, Dr.

Quintana did state that Plaintiff could travel without a companion, walk at a slow pace, use

public transportation, climb stairs, engage in personal hygiene such as feeding and bathing

oneself, and use paper files.  [*Id.*]

In determining that Dr. Quintana's opinions were not entitled to controlling weight, the ALJ explained that Dr. Quintana's opinions as to Plaintiff's extreme limitations in the worksheet and her progress notes were not well-supported by the record as a whole and were inconsistent with other substantial evidence in the record, including her own examination records.  [*Id.* at 7-7, 3-50].  The ALJ's determination at this step was proper.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (holding that if a treating physician's opinion is inconsistent with other substantial evidence in the record it is not entitled to controlling weight).

The ALJ then moved to the second step of the analysis and provided the weight to be given to Dr. Quintana's opinions in her examination records, the worksheet, and her progress notes.  In determining that Dr. Quintana's opinions in the worksheet and her progress notes were not entitled significant weight, the ALJ cited one of the factors from 20 C.F.R. § 404.1527(c): Dr. Quintana's opinions were not consistent with the other substantial evidence, including her own examination records during the relevant time period, (AR Doc. # 7-2, 20-24).  *See* 20 C.F.R. § 404.1527(c)(4)(consistency).  The ALJ provided two examples of inconsistency explaining that "these findings are hardly an adequate basis for limiting the claimant to 20 minutes of sitting, standing and walking each per day."  [AR Doc. # 7-2, 20].  First, the ALJ noted that "Dr. Quintana's notes from the date of the [worksheet] . . . simply [state] that the claimant is without edema, without difficulty moving, and without gait disturbance."  [*Id.*]  Second, the ALJ also pointed out that "the claimant testified that he finished his internship in July 2010, which required him to work considerably longer than Dr. Quintana limited him to; as noted, the claimant testified that he worked four to eight hours or so per day."  [*Id.*]

14

The ALJ also discussed Dr. Quintana's opinions in her examination records.  [AR Doc. # 7-2, 19-21].  Among the records considered by the ALJ were Dr. Quintana's treatment notes from February 2008 through October 2008 (*Id.* at 7-7, 3-50), December 2008 through August 2009 (*Id.* at 7-11, 2-37), and March 2010 through August 2010 (*Id.* at 7-12, 2-45).  The ALJ pointed out that throughout these notes that Dr. Quintana had repeatedly noted that Plaintiff did not have difficulty moving, often had a full range or nearly full range of motion in his back, had no gait disturbance, subluxation, or musculoskeletal deformity.  [*Id*. at 7-2, 19-21].  Her notes also provided that Plaintiff's pain had been managed conservatively through medications that did not have negative side effects.  [*Id.*]

Based on a review of the record, I find that the ALJ did not err when she gave Dr. Quintana's opinions in the worksheet and progress notes little weight.  As the ALJ noted, Dr. Quintana's treatment notes from the same date as the worksheet provided that throughout her examination Plaintiff did not have any abnormalities in his arms, legs, or spine, was moving without difficulty, and was walking normally.  [*Id.* at 7-11, 25].  These results are similar to both earlier and subsequent reports.  All other doctors' and other related therapists' findings were in line with Dr. Quintana's treatment notes, and thus inconsistent with her worksheet and progress notes.  For example, in March of 2009, Dr. Gary A. Mohr found that Plaintiff had no functional limitations aside from minor right arm reaching restrictions.  [*Id.* at 7-7, 135-37].  Throughout 2009 and early 2010, Dr. Michael A. Dallenbach, Dr. Chloe Dent, and Dr. Allen Myers all found that Plaintiff had normal functioning ability after recovering from shoulder surgery with minimal pain.  [*Id.* at 7-10, 74-80 & 7-11, 44-61].  Similarly, Plaintiff's physical therapist reported that Plaintiff was healthy with mild right shoulder and back pain from prolonged sitting or standing.

[*Id.* at 7-10, 27-30].    Furthermore, as the ALJ correctly pointed out, and as is further discussed in section (VI)(c) below, Dr. Quintana's worksheet and progress notes are inconsistent with Plaintiff's own testimony about his daily activities and performance at a mechanical internship.

Thus, the ALJ appropriately gave less weight to Dr. Quintana's opinions that Plaintiff was unable to work inasmuch as it was inconsistent with the documentation that Plaintiff was moving well with some limited right arm and standing/sitting restrictions.  *See Plummer v. Apfel*, 186 F.3d at 429 (recognizing that a practitioner's opinion may be rejected if there is contradictory medical evidence); 20 C.F.R. § 404.1527(d)(3) (specifying that the "more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion").  Accordingly, I find no error in the ALJ's decision to give Dr. Quintana's opinions in the worksheet and progress notes little weight, *see Watkins*, 350 F.3d at 1301, which is supported by substantial evidence in the record.

Contrary to Plaintiff's argument, the ALJ did not completely reject Dr. Quintana's opinions, but instead opted to give her treatment notes more weight.  The Court's role is not to reweigh the evidence or substitute its judgment for that of the Commissioner.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  In my limited reviewing capacity and because the ALJ did not reject Dr. Quintana's opinion entirely and provided adequate reasons for her partial rejection, I find that the ALJ's reasons for disregarding Dr. Quintana's opinions in her worksheet and progress notes, and accepting those in her examination records are both legitimate and sufficiently specific.  *Watkins*, 350 F.3d at 1301.  In her decision, the ALJ satisfied the requirement of "confirm[ing] that the opinion is consistent [or inconsistent] with other substantial evidence in the record."  *Watkins*, 350 F.3d at 1300.  In over four pages of analysis,

16

the ALJ discusses medical findings contrary to the worksheet and progress notes including Dr.

Quintana's own examination records, and those of Dr. Mohr, Dallenbach, Myers, Dent, and

Plaintiff's physical therapist.  [AR Doc. # 7-2, 17-22].  Accordingly, I find that the ALJ's

decision was supported by substantial evidence.

Plaintiff's next contention is that, because the ALJ rejected a treating physician's

opinion, she was required to expressly discuss the six factors from 20 C.F.R. § 404.1527(d).  The

Tenth Circuit held in *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007), that an ALJ need

not expressly discuss each factor from the regulation in her written decision.  Indeed, as *Oldham*

points out, not every factor will apply in every case.  *Id*.  The ALJ need only provide a reviewing

court with enough of an explanation of her analysis of a treating physician's opinion to allow the

court to determine how much weight the ALJ accorded to the opinion and the reasons the ALJ

gave the source weight. *Id.*

Here, the ALJ described the fact that other medical evidence in the record was

inconsistent with Dr. Quintana's findings in the worksheet and progress notes.  [AR Doc. # 7-2,

17-22].  The ALJ noted that the limitations Dr. Quintana placed on Plaintiff's ability to lift and

carry 20 pounds conflicted with her own objective findings in her treatment notes which

provided that Plaintiff was of normal strength, normal gait, and had a good range of motion.  *Id*.

Additionally, the ALJ noted that all the other objective medical evidence in the record was

consistent with Dr. Quintana's treatment notes.  *Id*.  Because the ALJ provided specific,

legitimate reasons for giving Dr. Quintana's opinions in the worksheet and progress notes little

weight, and her decision reflects consideration of the appropriate factors, the Court finds no error

with the ALJ's findings.  *See Watkins*, 350 F.3d at 1301.  Although they do not directly track the

17

factors in 20 C.F.R. § 404.1527(d), they allow this Court to properly review the ALJ's analysis

on appeal.  *See Langley*, 373 F.3d at 1119; *Firkins v. Astrue*, No. 08-cv-01207-CMA, 2009 WL

1575184, at *9 (D. Colo., June 3, 2009).

    **2.**    **Dr. Vadnal**

Plaintiff also argues that the ALJ improperly rejected the opinions of his treating

Psychiatrist at the Office of Veteran's Affairs, Dr. Robert Vadnal.  Dr. Vadnal provided his

opinions in his treatment notes (AR Doc. # 7-11, 38-64), use of the Global Assessment of

Functioning ("GAF") Scale, through a mental "Functional Capacity" worksheet prepared in 2009

(*Id*. at 7-10, 86-87), as well as through a "Mental Impairment Questionnaire" prepared in 2010

(*Id.* at 7-11, 67-73).  Dr. Vadnal's GAF analysis of Plaintiff ranged from scores of 45-50, and his

worksheets all indicated that Plaintiff's work-related abilities were limited in all areas.  [*Id*. at 7-

10, 86-87 & 7-11, 67-73].  As Plaintiff correctly asserts, by regulation the ALJ was required to

give "controlling weight" to Dr. Vadnal's opinions unless they were contrary to medical

evidence or inconsistent with the record as a whole.  *See* 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2).  Here, the ALJ determined that Dr. Vadnal's GAF evaluations and worksheets

were inconsistent with the record as a whole, including his own treatment notes.  [AR Doc. # 7-

2, 19-22].  For the following reasons, I agree.

The ALJ determined that Dr. Vadnal's GAF scores and opinions in his worksheets

conflicted with his treatment notes.  [*Id*.]  First, the ALJ discussed Dr. Vadnal's GAF scores.

[*Id*.] She explained that a GAF score in the 45-50 range indicates that an individual is suffering

from "serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting)

or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable

to keep a job)."  Am. Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34

(Text Rev. 4th ed. 2000) (DSM–IV) (bolding and capitalization omitted).  The ALJ points out

that Dr. Vadnal's treatment notes are inconsistent with such a finding.  [AR Doc. # 7-2, 19-22].

She provides that instead Dr. Vadnal's treatment notes provide that Plaintiff was "dressed

normally, had no bizarre features[,] was cooperative . . . speech was of normal rate and tone . . .

[and] had [] no current delusions or hallucinations."  [*Id.*] Additionally, the ALJ provided that

Plaintiff "denied suicidal/homicidal ideation.  His affect was only mild to moderate depression

and mild irritability. [Plaintiff] was clear and oriented x3, and his insight and judgment were

average."  [*Id.*]  The ALJ observed that "[t]hese mental status examinations, noting generally

mild symptoms, do not support a GAF score of 45."  [*Id.*]

The ALJ also discussed Dr. Vadnal's worksheets in which Dr. Vadnal concluded that

Plaintiff was slightly to markedly impaired in nearly all functional areas.  [*Id.*]  Specifically, Dr.

Vadnal provided that Plaintiff was limited in the following ways:

- marked limitation in ability to carry out detailed instructions;

- extreme limitation in the ability to maintain concentration and attention for extended periods of time;

- moderate limitation in performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances;

- a moderate limitation in the ability to sustain an ordinary routine without supervision;

- marked limitation in the ability to work in coordination with or in proximity to others without being distracted by them;

- marked limitation in the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods;

• marked limitation in the ability to interact appropriately with the general public;

• moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;

• moderate limitation in the ability to get along with co-workers and peers without distracting them or exhibiting behavioral extremes;

• moderate limitation in the ability to respond appropriately to changes in the work setting;

• marked limitation in the ability to travel in unfamiliar places or use public transportation; and

• moderate limitation in the ability to set realistic goals or make plans independent of others.

[*Id*. at 7-2, 53, 7-10, 86-87 & 7-11, 67-73].   At a hearing before the ALJ, a vocational expert ("VE") testified that a person with such severe limitations could not perform any work.   [*Id*. at 7-2, 53-54].   In her decision, the ALJ acknowledged that Plaintiff routinely saw Dr. Vadnal (approximately every 2-3 months), but stated that his opinion as to these restrictions was inconsistent with the evidence of record as well as Dr. Vadnal's own treatment notes.   [*Id*. at 7-2, 19-22 ("Dr. Vadnal's treatment notes do not support the level of limitations assessed in these forms.")]   The ALJ pointed out that Dr. Vadnal observed generally mild symptoms in examining Plaintiff , that he noted that Plaintiff was consistently dressed normally and was cooperative with questions.   [*Id.*]   Dr. Vadnal also noted that Plaintiff's speech was of normal rate and tone, Plaintiff had "less rapid thinking or only mild paranoid thinking, and no current delusions or hallucinations. [Plaintiff] denied suicidal/homicidal ideation [and] his affect was only mild to moderate depression and mild irritability."   [*Id.*]

Additionally, the ALJ found that Dr. Vadnal's GAF analysis and worksheet opinions conflicted with the other psychological evidence including the opinion of consultative examiner

Dr. Brett Valette.  In January 2009, Dr. Valette examined Plaintiff and assessed a GAF score of

65-70.  [*Id.* at 7-7, 107-110].  This score on the GAF scale provides that an individual has "some

mild symptoms (e.g. depressed mood and mild insomnia) or some difficulty in social,

occupational, or school functioning (e.g., occasional truancy, or theft within the household), but

is generally functioning pretty well, and has some meaningful interpersonal relationships."  Am.

Psych. Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (Text Rev. 4th ed. 2000)

(DSM–IV) (bolding and capitalization omitted).  The ALJ noted that this GAF score was more

consistent with the evidence as a whole, including Dr. Vadnal's examination of the Plaintiff, and

is supported by Dr. Valette's evaluation.

      In declining to give Dr. Vadnal's opinion controlling weight, the ALJ thus properly

followed the prescribed regulatory process for doing so, and, given the evidence she cited, I am

unable to say her cited reasons for doing so are bereft of substantial evidence.  "Substantial

evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th

Cir. 2005); *see also Oldham*, 509 F.3d at 1258 (stating that the ALJ "provided good reasons" for

giving little weight to treating physicians' opinions: they did not consider contrary evidence and

they conflicted with well-supported medical evidence to the contrary); *White v. Barnhart*, 287

F.3d 903, 908 (10th Cir. 2001) (stating sufficient reasons to disregard physician's opinion

included lack of support for findings, opinion was inconsistent with other medical opinions, and

treatment relationship with claimant was relatively brief).  The ALJ then properly moved to the

second step of the analysis and provided the weight to be given to Dr. Vadnal's GAF score and

opinions in his worksheets.  This step was also proper pursuant to 20 C.F.R. §

404.1527(c)(4)(consistency).  Accordingly, I find no error in the ALJ's decision to give Dr.

Vadnal's GAF score and worksheet opinions little weight, *see Watkins*, 350 F.3d at 1301, which

is supported by substantial evidence in the record.  Because Dr. Vadnal's opinion was not

entirely disregarded and appropriate reasons were given, the ALJ's decision was proper.

*Watkins*, 350 F.3d 1301.

        Plaintiff again argues that, because the ALJ rejected a treating physician's opinion, she

was required to expressly discuss the six factors from 20 C.F.R. § 404.1527(d). However, as

discussed above, an ALJ need not expressly discuss each factor but instead need only provide

enough of an explanation to allow the court to determine how much weight accorded to the

opinion and the reasons.  *Oldham*, 509 F.3d at 1258.  Here, the ALJ described the fact that other

evidence in the record was inconsistent with Dr. Vadnal's GAF score and worksheets, and noted

that the extreme limitations Dr. Vadnal placed on Plaintiff's ability to work conflicted with his

own objective findings in his treatment notes.  Because the ALJ provided specific, legitimate

reasons and her decision reflects consideration of the appropriate factors, the Court finds no

error.  *See Watkins*, 350 F.3d at 1301.

        Accordingly, I affirm the ALJ's determinations as to both Dr. Quintana and Dr. Vadnal.

**C.      ALJ's Credibility Determination**

        Lastly, Plaintiff challenges the ALJ's determination as to Plaintiff's credibility.

Specifically, Plaintiff alleges that in making her credibility determination the ALJ solely relied

on Plaintiff's receipt of unemployment benefits and such reliance was improper.  Plaintiff's

argument is without merit.

        The Tenth Circuit has stated that "[c]redibility determinations are peculiarly the province

of the finder of fact" and will not be upset "when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation marks and citation omitted). As the ALJ recounted in this case, a two-step process is used to evaluate a claimant's credibility. First, the ALJ must "consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7p. If this step is satisfied, the ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id*. During this evaluation, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id*. In assessing a claimant's credibility, the ALJ need not engage in a factor-by-factor recitation of the evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). Instead, the ALJ must merely set forth the specific evidence she relies on in evaluating the claimant's credibility. *Id.* "Because the determination of credibility is left to the ALJ as the finder of fact, that determination is generally binding on the reviewing court." *McDonald v. Astrue*, No. 10-cv-00871, 2011 WL 1398928, at *7 (D. Colo., Apr. 13, 2011) (unpublished), *aff'd*, 492 Fed. Appx. at 876.

In the instant case, the ALJ followed the two-step process described above. After finding that Plaintiff's shoulder, back, and mental disorders constituted severe impairments, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity,

23

persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]."  [AR Doc. # 7-2, 18].  In discussing Plaintiff's credibility, the ALJ referred to specific evidence in the record, including Plaintiff's hearing testimony. Among other things, the ALJ noted that Plaintiff:

• could perform certain household tasks– such as self-care, cooking, cleaning, and    frequent grocery shopping;

• completed a 180-hour internship in the automotive industry, in which he followed a master mechanic and worked approximately eight hours a day for one or two weeks and thereafter worked four or five hours a day;

• was able to engage in vigorous activity including sawing wood;

• still went out to visit with family, attended family functions, and watched television.

[AR Doc. # 7-2, 18-20 (citations omitted)].   This evidence is relevant to the credibility of Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms. *See, e.g., Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (noting that "the nature of daily activities" can be considered in assessing credibility); *see also Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990) (non-disability determination supported by contradiction between plaintiff's assertions regarding her limitations and evidence that she had "full-time responsibility for household and parenting duties").

The ALJ also relied heavily on the  medical records in discounting Plaintiff's credibility. [AR Doc. # 7-2, 18-20].  This evidence is also relevant to determining Plaintiff's credibility.  *See* 20 C.F.R. § 416.929(c)(4) ("we will evaluate your statements in relation to the objective medical

evidence"); SSR 96-7P ("the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"); *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988) (the "extensiveness of the attempts . . . to obtain relief" and the "frequency of medical contacts" are valid considerations that an ALJ can take into account when assessing a claimant's credibility).  Thus, Plaintiff's allegation that the ALJ solely relied on Plaintiff's receipt of unemployment benefits was incorrect.

Further, the ALJ found Plaintiff to be less than fully credible because Plaintiff had been receiving unemployment benefits during the time in which he claimed to be disabled.  [AR Doc. # 7-2, 20].  The ALJ explained that "the Colorado unemployment insurance program is based on the principle that only those persons who are willing and able to work are entitled to unemployment benefits."  [*Id.* (*citing* Colo. Rev. Stat. § 8–73–107 and *Sylvara v. Indus. Comm'n*, 550 P.2d 868 (Colo.1976))].  She concluded that the Plaintiff's "collection of unemployment benefits undercuts his credibility."  [*Id.* (*citing Vanatta v. Barnhart*, 327 F.Supp.2d 1317 (D.Kan. 2004))].  The ALJ was not precluded from considering the unemployment benefits Plaintiff earned.  20 C.F.R. § 416.929(c)(3)(vii) (ALJ can consider "[o]ther factors" in weighing a plaintiff's credibility); *see Moses v. Astrue*, No. 10-cv-02824, 2012 WL 1326672, at *3 (D. Colo. Apr. 17, 2012) (unpublished) (finding that "[t]he ALJ noted correctly that in order to receive unemployment benefits, plaintiff was required to affirm that he was willing and able to work" and that "[s]uch affirmations are inconsistent with claims of disability and thus negatively impact a claimant's credibility").  Thus, Plaintiff's allegation that the ALJ's reliance on collection of unemployment was improper was misplaced.

Accordingly, I find that a reasonable mind could accept as adequate the evidence relied

on by the ALJ in determining Plaintiff's credibility.

## VII.  CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's final order.


Dated: October 21, 2013, in Denver, Colorado.

BY THE COURT


  s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE